UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANNY C. ALLEN | CIVIL ACTION |
| VERSUS | NO. 06-0028 |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY | SECTION "B" (3) |

## REPORT AND RECOMMENDATION

Plaintiff, Danny C. Allen ("Allen"), brings this action under 42 U.S.C. § 405(g)

challenging a final decision of Defendant Commissioner denying his application for Social

Security disability benefits.  Both parties have filed summary judgment motions which have

been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Considering the record, the memoranda of the parties and the applicable law, **IT IS**

**RECOMMENDED** that the Commissioner's Motion for Summary Judgment be GRANTED ,

the Plaintiff's Motion for Summary Judgment be DENIED and his case be DISMISSED WITH

PREJUDICE for the following reasons.

## PROCEDURAL HISTORY

On March 1, 2004, Plaintiff filed applications for Social Security Income and Disability

Benefits alleging that he became disabled on June2, 2002 due to "black outs" and "severe

headaches."[1]   Plaintiff's applications for benefits were denied;[2] thereafter, plaintiff requested a

hearing before an Administrative Law Judge.[3]   On April 22, 2005, Administrative Law Judge

(ALJ) Juan C. Marrero conducted a hearing in Metairie, Louisiana.[4]   Plaintiff was represented

by counsel at the hearing.[5]   In addition to the plaintiff, Vocational Expert (VE) Douglas Kuylen

also testified.[6]

ALJ Marrero determined that plaintiff was not disabled and explained that plaintiff's

"severe" seizure disorder does not meet or equal the criteria of any impairment listed at 20

C.F.R. Part 404, Subpart P. The ALJ further concluded that, although the Allen cannot perform

his past relevant work as a welder, carpenter, backhoe operator or scaffold builder (all of which

entail operating machinery); he remains capable of performing a broad range of work unlimited

in exertional level but with the following work-related restrictions, to wit: (1) no climbing ramps,

---

[1]*See* Application for Supplemental Security Income dated March 1, 2004 [Adm. Rec. 169-171]; Application for Disability Benefits dated March 1, 2004 [Adm. Rec. 44-47]; Disability Report dated March 1, 2004 [Adm. Rec. 48-49].

[2]*See* Disability Determination and Transmittal dated July 8, 2004 (regarding hypertension) [Adm. Rec. 172]; Disability Determination and Transmittal dated July 8, 2004 (regarding possible syncopal episodes) [Rec. Doc. 16A, 17-20].

[3]*See* Request for Hearing by Administrative Law Judge dated August 10, 2004 (alleging disability) [Adm. Rec. 24].

[4]*See* Transcript of March 1, 2005 Hearing before ALJ Marrero [Adm. Rec. 173-197]; Transcript of October 15, 2003 Hearing before ALJ Donald B. Fishman [Adm. Rec. 198-227].

[5]Appointment of Representative dated August 10, 2004 (accepting the appointment of Monica Ferraro) [Adm. Rec. 23].

[6]*See* Transcript of March 1, 2005 Hearing before ALJ Marrero (wherein VE Kuylen testified that there are a significant number of jobs available that Allen can perform including handpacker, assembler, textile sewing machine operator and housekeeper/cleaner) [Adm. Rec. 195-196].

stairs ladders, ropes or scaffold; (2) no working at heights and (3) no working with dangerous

machine.[7]  On May 2, 2005, plaintiff submitted his request for review of the hearing decision.[8]

On November 4, 2005, the Appeals Council denied review.[9]  Plaintiff filed for judicial review of

the final decision on January 4, 2006.[10]   The parties filed cross-motions for summary judgment

and the matter is now ripe for determination.[11]

## BACKGROUND FACTS

Allen was thirty-eight years old at the time of the hearing.  Plaintiff testified that he

completed the eighth grade, had some trade school experience and was later certified in

welding.[12]  In addition to plaintiff's past relevant work as a welder, Allen's seventeen year work

history includes employment as a carpenter and scaffold erector, *inter alia*.  Plaintiff testified

that he quit working when he began experiencing "blackouts."  Allen explained that he has no

recollection of his seizures and that the only one who has witnessed his seizure activity is his

wife.  Allen described the event as either falling down, sometimes shaking or looking dazed.

Plaintiff  further testified that, after a seizure,  he feels drained and experiences severe headaches

which are paralyzing.  Allen further testified that, aside from severe headaches and blackouts, he

---

[7]*See* Decision of ALJ Marrero dated April 22, 2005 [Adm. Rec. 14].

[8]*See* Request for Review of Hearing Decision dated May 2, 2005 [Adm. Rec. 7-8].

[9]*See* Notice of Appeals Council Action dated November 4, 2005 [Adm. Rec. 4-6].

[10]*See* Complaint filed January 4, 2006 [Fed. Rec. Doc. 1].

[11]*See* Plaintiff's Motion for Summary Judgment [Fed. Rec. Doc. 13]; Defendant's Cross-Motion for Summary Judgment [Fed. Rec. Doc..14].

[12]*See* Transcript of the March 1, 2005 Administrative Hearing [Adm. Rec. 179].

experienced no other medical problems.[13]  Plaintiff admitted that he cares for children at night,

while his wife is working and helps with the household chores during the day, including washing

the clothes and accompanying his wife to the grocery store.  When asked why he feels that he

cannot work, Allen testified that he does not know when he is going to blackout and he wants the

doctor to find out what is wrong with him.[14]

### MEDICAL EVIDENCE

The plaintiff does not dispute the ALJ's characterization of the medical evidence,  the

sole alleged error is with respect to the absence of analysis discussing *per se* disability on the

basis of the specific criteria set forth in Listing 11.02 (Epilepsy).  This Court's *de novo* review of

the administrative record indicates that the ALJ's summary of the medical evidence is

substantially correct.

The ALJ's characterization is accurate in that, despite the array of tests, including X-rays,

CT scans and MRI's conducted since 2002, the cause of Allen's history of "black outs" has not

been medically determined and there has been no diagnosis of epilepsy based upon clinical or

diagnostic tests.  Radiographs of the skull dated August 19, 2002 showed "[n]o significant

intercranial MRI abnormality.  [Adm. Rec. 86].  North Oaks Health System's Holter Report

dated August 23, 2002 noted "no sig[nificant] arrhythmia" and technical observations included

"no symptoms/*no diary*". [Adm. Rec. 89].  North Oak's Electroencephalogram (EEG)

interpretation dated July 30, 2002 stated that there was "[n]o underlying spike-and-wave

pattern," "no superimposed focal abnormality" and "no evidence of any paroxymal features."

---

[13]*Id.* [Adm. Rec. 213, 216-217].

[14]*Id.* [Adm. Rec. 214-215].

[Adm. Rec. 91]. The report further noted that when Allen was fully awake, his cerebral activity improved with no significant slowing. The impression of this record was that "it was within normal range." [Adm. Rec. 91].

Lallie Kemp Medical Center (LKMC) emergency department records dated October 10, 2002 and November 18, 2002 reiterate the plaintiff's complaints of a history of black out spells and headaches. [Adm. Rec. 136, 158]. The aforesaid records further note Allen's reported history of syncopal episodes for six years which was uncorroborated by any clinical diagnosis. The records specifically mention that plaintiff's neurological work up performed by North Oaks (including the T-scan administered in July of 2002) failed to reveal any cause/etiology. [Adm. Rec. 138]. The only limitations placed upon Allen's activities were that he refrain from driving and using dangerous equipment. *Id.*

St Helena Community Health Center (SHCHC) medical records dated February 14, 2003 and February 21, 2003 reflect plaintiff's complaints of headaches, sleeping difficulties and right shoulder pain. [Adm. Rec. 81-83]. Most notably, SHCHC clinic notes dated February 27, 2003 reflect that plaintiff failed to fill his prescription for head-ache (HA) medication, *i.e.*, Inderal. [Adm. Rec. 82]. SHCHC records dated April 4, 2003 suggest some concern about plaintiff's presentation for the sole purpose of a refill on prescription pain and sleep medications (Fioricet/Ambien). Clinic records state that plaintiff reported that he takes only two to three per day and that Allen was "very irrate in the waiting room." [Adm. Rec. 80]. Clinic notes further reflect a "psych" referral and a prescription for ten Ambien pills was written, but with "no refills." *Id.*

LKMC emergency department records dated February 24, 2003 state that Allen walked

into the emergency room complaining that he "fell out" the day before and that the episode was

witnessed by his wife. [Adm. Rec. 127].   The final diagnosis was *questionable* syncope.  *Id.*

The physician's assessment noted that Allen reported passing out but no fever or vomiting, *inter*

*alia*.  Additionally, it was noted that plaintiff was "alert, oriented [and] not in distress."  *Id.*   The

aforesaid record further noted "Head CT-Neg[ative]."  *Id.  See also* Diagnostic Radiology Report

dated February 24, 2003 (noting Negative Study with respect to CT of the Head) [Adm. Rec.

122].   On April 9, 2003, plaintiff returned to LKMC for a follow up visit regarding his

complaints of hypertension, head-aches and continuing complaints of syncope.  Diagnostic tests

were ordered including MRI of the brain, Echocardiogram and a Holter test.  Plaintiff was

prescribed Midrin instead of Inderal for headache relief and instructed to refrain from driving

and activities that posed a risk of injury in the event of a blackout.  [Adm. Rec. 118- 119].  Allen

was instructed to return in 2-3 months.  *Id.*

On March 10, 2003, plaintiff visited Louisiana State University Medical Center of

Louisiana at New Orleans (LSUMC-NO) Emergency Department seeking a neurological consult

to address his complaints of syncope and headache pain.   The triage record indicates that Allen

walked in, his condition was not urgent and that he was not in any distress.  Plaintiff  was

discharged and referred to the Neurology Department for a consult.  [Adm. Rec. 151-152].

LSUMC's May 5, 2003 Report of MRI  Brain with and without contrast was completely normal.

[Adm. Rec. 149, 154].  Neurological examinations performed at LSUMC throughout his course

of treatment consistently reflect no stress, sensation/reflexes grossly intact, motor function 5/5 in

all extremities, normal gait, normal MRI of the brain and normal neurological exam.  [Adm. Rec.

140, 145, 146].[15]

On March 9, 2004, plaintiff's LSUMC progress notes reflect that he reported more

frequent black outs and intense headaches, *inter alia*. The physician's impression was complex

*partial* epilepsy and Depakote was prescribed.   Plaintiff was instructed not to drive, to return in

twelve weeks and to keep an event diary. [Adm. Rec. 144]. Outpatient progress records explain

that Allen had achieved "seizure control on Depakote" but that he experienced facial swelling

and had to stop his medications. [Adm. Rec. 142].  Due to the adverse side effects experienced

on Depakote, plaintiff's physician substituted seizure medication Neurontin.  *Id.*

LSUMC-NO's EEG report findings dated May 11, 2004 stated that there was only a

generalized slowing of background activity and epileptiform abnormalities did not occur.  Dr.

Mader's impression was that the EEG was *mildly* abnormal, which is consistent with the finding

of diffuse cerebral dysfunction.  [Adm. Rec. 141].

### STANDARD OF REVIEW

The function of the court on judicial review of a denial of benefits is to determine

whether "substantial evidence" supports the final decision and whether the Commissioner used

the proper legal standards to evaluate the evidence.[16]   If the Commissioner's findings are

---

[15]*See also* Physical Residual Functional Capacity Assessment dated July 6, 2004 (finding no exertional limitations, no manipulative limitations, no visual limitations, no communicative and limitations, determining that plaintiff's only postural restriction was from climbing and further noting that his only environmental limitation was to avoid all exposure to the hazards of working with dangerous machinery, etc. ) [Adm. Rec. 155-162].

[16]42 U.S.C. § 405(g); *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999).

supported by substantial evidence, they must be affirmed.[17]  "Substantial evidence" is more than

a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.[18]   A district court may not try the issues *de novo*, re-

weigh the evidence or substitute its own judgment for that of the Commissioner, even if the

district judge believes that the evidence weighs against the Commissioner's decision.[19]

Nevertheless, the Court must carefully scrutinize the entire record to determine whether

substantial evidence exists to support the ALJ's findings.[20]  Nevertheless, "conflicts in the

evidence are for the Commissioner and not for the courts to resolve."[21]

      If proper principles of law were applied, and if the Commissioner's decision is supported

by substantial evidence, the findings are conclusive and must be affirmed.[22]

### ELIGIBILITY FOR DISABILITY BENEFITS

      To qualify for Social Security income or disability insurance benefits, the plaintiff must

meet the requirements set forth in the Social Security Act.[23]  Specifically, the plaintiff must be

---

[17]*Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[18]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Newton,* 209 F.3d at 452.

[19]*Masterson,* 309 F.3d at 272; *Newton,* 209 F.3d at 452.

[20]*Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992).

[21]*Masterson*, 309 F.3d at 272 (citations and internal alterations omitted).

[22]*See id.* (*citing Richardson,* 402 U.S. at 401)

[23]*See* 42 U.S.C. § 423(a) (2001).

under age 65, file an application for benefits and be under a disability as defined by the Act.[24]

Those claiming disability insurance benefits under the Act have the burden of showing the

existence of disability.  "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which ...

has lasted or can be expected to last for a continuous period of not less than 12 months."[25]

Establishment of "disability" is a dual process.  First, the claimant must prove that she suffers

from a medically determinable impairment.[26]  Second, the claimant must prove that her

impairment or combination of impairments render her unable to engage either in the work she

previously performed or other substantial gainful employment that exists in the national

economy.[27]

The Commissioner utilizes a five-step sequential evaluation to aid in the determination of

whether a claimant is disabled.[28]  A finding that the claimant is not disabled at any step is

conclusive and ends the inquiry.[29]  The five-step analysis was cogently restated in *Shave v. Apfel*:

> First, the claimant must not be presently working at any substantial gainful
> activity. Second,  the claimant must have an impairment or combination of
> impairments that are severe.  An impairment or combination of impairments is
> "severe" if it "significantly limits [a claimant's] physical or mental ability to do
> basic work activities."  Third, the claimant's impairment must meet or equal an
> impairment listed in the appendix to the regulations.  Fourth, the impairment must

---

[24]*See* 42 U.S.C. §§ 416(I), 423(a) (2001).

[25]42 U.S.C. § 423(d)(1)(A) (2001).

[26]42 U.S.C. §§ 416(I)(1), 423(d)(1)(A) (2001).

[27]42 U.S.C. §§ 416(I)(1), 423(d)(2) (2001).

[28]*Newton,* 209 F.3d at 453 (5th Cir. 2000).

[29]*Watson,* 309 F.3d at 272; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[30]

In conjunction with steps four and five, the Commissioner utilizes a "residual functional capacity (RFC) assessment to determine whether the applicant, notwithstanding severe impairment, has the physical and mental ability to perform work-related activities on a regular and continuing basis as is generally required by competitive, remunerative work.[31]  Thereafter, the Commissioner determines if the claimant has the physical and mental ability to perform her past relevant work.[32]  If the claimant's RFC meets or exceeds the requirements of her regular previous employment, the disability claim is denied.[33]  If not, the inquiry proceeds to step 5 where the Commissioner has the burden to show that the claimant can do work as it is generally performed in the national economy.[34]

### TREATING SOURCES STATEMENTS AND DETERMINATIONS

Ordinarily, the opinions, diagnoses and medical evidence of a treating physician who is

---

[30]*Shave v. Apfel*, 238 F.3d 592, 593 (5th Cir. 2001).

[31]RFC is defined as "what you can still do despite your limitations" and has three components, to wit: physical abilities, mental abilities, and other abilities affected by impairments.  20 C.F.R. § 404.1545(a) (2002); Soc. Sec. Ruling 96-8p, 61 F.R. 34474 (July 2, 1996).

[32]*See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987).

[33]*See* 20 C.F.R. § 404.1561 (2002).

[34]*See* 20 C.F.R. § 404.1566 (2002).

familiar with the claimant's injuries, treatment and responses should be accorded considerable or

great weight in determining disability.[35]  The ALJ may assign less weight to a treating

physician's opinion when there is good cause shown to the contrary.  "A treating physician's

opinion on the nature and severity of a patient's impairment will be given controlling weight if it

is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with other substantial evidence."[36]  The opinion of a specialist is generally

accorded greater weight than a non-specialist.[37]

The ALJ is not at liberty to reject a medical opinion without giving an explanation and is

not at liberty to make a medical judgment regarding the ability or the disability of a claimant to

engage in gainful activity where such inference is not warranted by clinical findings.[38]  Even

though the opinion and diagnosis of a treating physician should be afforded considerable weight

in determining disability, the ALJ has sole responsibility for determining a claimant's disability

status.[39]  Treating physicians' opinions are not conclusive regarding matters reserved to the

Commissioner.[40]   Good cause may permit the ALJ to discount the weight of a treating physician

relative to other experts where the treating physician's evidence is conclusory, is unsupported by

---

[35]*See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Newton*, 209 F.3d at 455.

[36]*Newton*, 209 F.3d at 455 (citations and inner alterations omitted and emphasis added).

[37]*Id.* (*citing Paul v. Shalala,* 29 F.3d 208 211 (5th Cir. 1994).

[38]*Loza,* 219 F.3d at 395.

[39]*Newton*, 209 F.3d at 456.

[40]*Id.* (*citing Brown*, 192 F.3d at 500).

clinical findings or is otherwise unsupported by the evidence.[41]

Fifth Circuit law and Social Security Regulations require that the SSA give good reasons

for discounting the medical opinion of a treating physician and, in so doing, give specific

consideration to the following factors: (1) length of treatment; (2) frequency of examination; (3)

nature and extent of treatment; (4) support of the physician's opinion afforded by the medical

evidence; (5) the consistency of the opinion with the record as a whole; and (6) the specialization

of the treating physician.[42]   "Additionally, SSR 96-5p provides, with respect to Residual

Functional Capacity Assessments and Medical Source Statements, that Adjudicators must weigh

medical source statements under the rules set out in 20 C.F.R. § 404.1527, providing appropriate

explanations for accepting or rejecting such opinions."[43]

## SPECIFICATION OF ERROR

Plaintiff's sole assignment of error is that the ALJ failed to specifically consider or

discuss Listing 11.02, which applies to epilepsy/seizure disorder.[44]   The Commissioner argues

that the plaintiff fails to show that he was prejudiced by the failure to specifically mention

Listing 11.02 in the ALJ's April 22, 2005 decision finding no disability.  The Commissioner

contends that Listing 11.02's criteria are *clearly* not met in this case.[45]

---

[41]*Id.*

[42]*See* 20 C.F.R. § 404.1527(d)(2).

[43]*Newton*, 209 F.3d at 456 (citations, inner quotation marks and ellipses omitted).

[44]*See* Plaintiff's Memorandum in Support of Motion for Summary Judgment [Fed. Rec. Doc. 13].

[45]*See* Defendant's Memorandum in Support of Cross-Motion for Summary Judgment (*citing* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.02) [Fed. Rec. Doc. 14]

**ANALYSIS**

The Listings' criteria are demanding and stringent.[46]  Moreover, at Step 3, the burden of

proof rests with the plaintiff.   That burden is to provide and identify medical signs and

laboratory findings that support <u>all</u> of the criteria for a Step 3 impairment determination.[47]  When

a plaintiff fails in this regard, the Court must conclude that substantial evidence supports the

ALJ's finding that no Listing-level impairment is present in this case.[48]

Upon review of Appendix 1, this Court finds that the ALJ correctly determined that the

plaintiff has not suffered for more than twelve months from one or more listed impairments

contained in Appendix 1, Subpart P, Regulation No. 4.  20 C.F.R. § 404. 1520.  Although

plaintiff was diagnosed with certain impairments, "for a claimant to show that his impairment

matches a listing, it must meet all of the specified medical criteria."[49]  "An impairment that

manifests only some of those criteria, no matter how severely, does not qualify."[50]  Furthermore,

"for a claimant to qualify for benefits by showing that his ... combination of impairments is

'equivalent' to a listed impairment, he must present medical findings equal in severity to all the

criteria for the one more similar listed impairment."[51]   The ALJ ruled that the medical findings

presented by the plaintiff did not support disability based on his combination of impairments.

---

[46] *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994).

[47]*See McCuller v. Barnhart*, 72 Fed.Appx. 155, 158 (5th Cir.2003); February 26, 2007, 914 F.2d 614, 619 (5th Cir.1990); 20 C.F.R. § 404.1526(a) (2005).

[48]*See Selders v. Sullivan*, 914 F.2d at 620.

[49]*Sullivan v. Zebley,* 493 U.S. 521, 529 (1990).

[50]*Id*. at 529.

[51]*Id.*

This Court defers to the findings of the ALJ, and finds they are supported by substantial

evidence, in particular the medical evidence previously discussed at length.

Plaintiff contends that the one sentence statement that the plaintiff's condition fails to

meet or equal any listing is conclusory and requires either reversal or remand for further

consideration and specific discussion of 11.02's requirements *vis a vis* the plaintiff's "severe"

seizure disorder.  Depending on the circuit and the circumstances, such an omission may dictate

remand.[52]   However, the rule of the Fifth Circuit is that it will not reverse the decision of the

ALJ due to the failure to follow the regulations unless the plaintiff can show that he was

prejudiced by the ALJ's failure.[53]  "To establish prejudice, a claimant must demonstrate that he or

she 'could and would have adduced evidence  that might alter the result.'"[54]

For plaintiff's seizure impairment to be equivalent to the disability listing under Section

11.02 and/or 11.03 of Subpart P, Appendix 1, the plaintiff who is (1) not actually engaging in

substantial gainful activity, (2) must be diagnosed with a seizure disorder, (3) under appropriate

medical treatment, (4) *compliant with prescribed medication regimen*, (5) and experience either

persistent major convulsive (grand mal or psychomotor) seizures more frequently than once

monthly or persistent minor nonconvulsive (petit mal, psychomotor, or focal) seizures more

frequently than once weekly.  Listing 11.02  applies to major-motor seizures and Listing 11.03

---

[52]*Compare Burnett v. Commissioner,* 220 F.3d 112, 119-20 (3rd Cir. 2000)(remanding
where the ALJ "'merely stated a summary conclusion that appellant's impairments did not meet
or equal any Listed Impairments,' without identifying the relevant listed impairments, discussing
the evidence or explaining his reasoning."), *with Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir.
1999) (holding that the conclusory form of the ALJ's decision alone does not justify remand).

[53]*See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

[54]*Id.* (*citing Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir. 1984).

applies to minor-motor seizures. When a claimant's condition does not meet the criteria of any of

the listed impairments that give rise to a presumption of eligibility for benefits, he may still

establish presumptive disability by showing that his impairment is accompanied by symptoms

that are "at least equal in severity and duration to the listed findings." 20 C.F.R. § 416.926(a);

*see Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.2004).

The Listing at issue (11.02) applies to epilepsy which is "documented by detailed

description of a typical seizure pattern, including all associated phenomena; occurring more

frequently than once a month, in spite of at least 3 months of prescribed treatment,"  with either

daytime episodes or  "nocturnal episodes manifesting residuals which interfere significantly with

activity during the day." 20 C.F.R. § 220, App. 1.  The ALJ determined that Allen's "blackouts"

were not severe enough to equal Listing 11.02 because there was no EEG evidence of an

abnormal brain wave pattern, the frequency of the seizures was open to question given the lack

of emergency medical care for such episodes and there was no medically documented residual

symptoms that interfered with plaintiff's activities during the day.

Moreover, the ALJ also found the plaintiff only partially credible.  The ALJ specifically

noted that Allen has no exertional limitations and that, despite the self-reported frequency of

"seizure" episodes which was simply reiterated in the medical records' history section, there

were no witnesses to the "blackouts" outside of the plaintiff's family.[55]

There is no clinical/medical evidence documenting the manifestation of uncontrolled

behavior or impaired intellectual or other function.   There is only plaintiff's oral history/report

of experiencing blackouts without any chart or diary documenting the time, frequency, duration

---

[55]*See* ALJ Marrero's Decision [Adm. Rec. 10].

and severity of said reported syncopal episodes.  The plaintiff did not follow his physician's

instruction to maintain a seizure chart/diary.  There is a complete absence of this necessary

documentary support for the bare allegations that plaintiff's condition meets or equals Listing

11.02.[56]  Treating physician's records at Lallie Kemp Medical Center Records indicate that there

are no factors affecting plaintiff's cognitive ability[57] and thus there is no good reason for

plaintiff's non-compliance.  Compliance with a prescribed course of treatment, prescription drug

therapy and other physician's order which may facilitate control of the plaintiff's condition is a

necessary prerequisite to any determination of disability.

The Commissioner correctly notes that the plaintiff has failed to establish that he

experiences a medically identifiable physiological impairment that causes his alleged seizure

activity approximating the severity and frequency described in Listing 11.02.  Most notably,

plaintiff was not placed on seizure medication (Depakote) until March 11, 2004.  When he

experienced adverse effects, his medication was changed to Neurontin which worked well.  For

the eight month period beginning May 11, 2004, medical records reflect that plaintiff

experienced no seizure activity until January 24, 2005, when plaintiff had run out of all of his

---

[56]*See also* North Oaks Department of Neurodiagnostics Report on Electroencephalogram
dated July 30, 2002 (noting that the record was within normal range with no evidence of a spike
and wave pattern or any other discharges to suggest underlying Epileptiform activity) [Adm.
Rec. 91]; MCOLNO EEG Report dated May 11, 2004 (again noting the absence of Epileptiform
abnormality but generalized slowing of background activity consistent with diffuse cerebral
dysfunction and concluding with the impression of " *mildly* abnormal EEG") [Adm. Rec. 141].

[57]*See* Outpatient Practitioner Assessment dated February 26, 2003 [Adm. Rec. 128]. *See
also* Report of CT Scan of the Head dated February 24, 2003 (negative study) [Adm. Rec. 122];
North Oaks Radiology Department Radiology Report on MRI Brain  dated August 19, 2002
(finding no significant intracranial MRI abnormality) [Adm. Rec. 85].

medications.[58]

In sum, Allen points to no *medical* evidence or testimony that raises any cause to question the ALJ's step 3 finding.  Significantly, the ALJ's well-reasoned assessment of the claimant's credibility must be accorded great deference.[59]  An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain as well as the duty to ultimately determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment.  To the extent that the ALJ rejected plaintiff's claims of *incapacitating* and/or *debilitating* symptomatology, that decision was plainly premised upon plaintiff's failure to comply with the prescribed course of treatment,[60] the complete absence of any exertional limitations[61] and the plaintiff's lack of credibility.

Substantial evidence, including Allen's own testimony, supports the ALJ's determination

---

[58]*See* Lallie Kemp Emergency Department Record dated January 24, 2005 (noting "out of *all* med[ication]s") [Adm. Rec. 164 (italicized emphasis added)].

[59]*See Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002) (stating that the ALJ has the responsibility to resolve questions of credibility).

[60]*See* Lallie Kemp Medical Center Outpatient Clinic Visit Record dated June 18, 2003 (noting plaintiff missed his Holter test appointment) [Adm. Rec. 116]; St. Helena Community Health Center Progress Record dated February 2, 2003 (noting that plaintiff was given a prescription for Inderal  but that he did not get it filled) [Adm. Rec. 82]; MCOLNO Records dated January 24, 2005 (noting plaintiff's report of instances of syncopal activity beginning the prior evening and that he was "out of all meds") [Adm. Rec. 165].

[61]*See* Physical Residual Capacity Assessment dated July 6, 2004 [Adm. Rec. 155-162]; *see also* Lallie Kemp Medical Center Outpatient Practitioner Assessment date April 9, 2003 (restricting plaintiff only from hazardous activities that could risk "falling" injury and operating dangerous instrumentalities/machinery including but not limited to driving) [Adm. Rec. 118-119]; Echocardiogram Report dated July 15, 2003 (finding no dimensional abnormality, no wall motion abnormality, normal global systolic function, normal cardiac valves/valve function and concluding normal LV function) [Adm. Rec. 110-111]; Lallie Kemp Medical Center Regular Stress Test Report dated July 22, 2004 (concluding negative stress test by EKG criteria and *good exercise tolerance*) [Adm. Rec. 93].

that plaintiff functioned well with many daily activities that were consistent with some level of

gainful employment and that his seizure disorder and headaches were well controlled by

prescription medications, Neurontin and Midrin/Inderal. The record evidence is ample to support

the ALJ's credibility determinations and other findings with respect to the absence of debilitating

impairments and plaintiff's residual functional capacity to perform work at *all* exertional levels.

## CONCLUSION

Having conducted a *de novo* review of the administrative record and considering the

record as whole, the undersigned Magistrate Judge finds that the plaintiff's argument that he

either meets or equals Listing 11.02 (Epilepsy) is without merit.  The Commissioner's decision is

supported by "substantial evidence."[62]   Where the Commissioner's decision rests upon adequate

findings supported by substantial evidence having rational probative force, a reviewing court

must not substitute its judgment for that of the Commissioner.  Accordingly, the Court makes the

following recommendation, to wit:

**IT IS RECOMMENDED** that the Commissioner's Motion for Summary Judgment be

GRANTED, the Plaintiff's Motion for Summary Judgment be DENIED and that plaintiff's case

be DISMISSED WITH PREJUDICE.

## OBJECTIONS

A party's failure to written objections to the proposed findings, conclusions, and

recommendations in a magistrate judge's report and recommendation within ten (10) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the

---

[62]*See* 42 U.S.C. § 405(g); *Mathews v. Eldridge*, 424 U.S. 319, 339 n.21 (1976).

district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Services Automobile Association,* 79 F.3d

1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this   27th   day of February, 2007.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**